# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| CLARENCE C. HOUSER, JR., | ) |
| Plaintiff, | ) Civil Action No. 12-1024 |
| v. | ) Judge Cathy Bissoon |
| PATRICK DONAHOE, | ) |
| Defendant. | ) |

## ORDER

For the reasons that follow, Defendant's Motion to Dismiss (Doc. 11) will be granted.

## BACKGROUND

This is the second lawsuit brought by Plaintiff in this Court regarding his employment with the Postal Service, and his eventual termination therefrom. Plaintiff brought his first suit in February 2009, alleging, in relevant part, that Defendant discriminated and retaliation against him based on medical conditions/injuries, and that Defendant failed to accommodate his physical restrictions. *See* Compl. in Civil Action No. 09-180 (W.D. Pa.) (Bissoon, M.J., presiding by consent of parties) (at times, "the first lawsuit" or "the prior lawsuit"); *see also* Order dated May 21, 2010 (Doc. 17 in Civil Action No. 09-180) at 2. Plaintiff was still an employee when the first action was filed, and the lawsuit focused on Defendant's handling of two on-the-job injuries purportedly sustained by Plaintiff. *See* Doc. 17 in 09-180 at 2.

Specifically, Plaintiff suffered a knee injury in August 2007, and he took time off of work to have knee surgery and to recover. *See generally* Order dated May 9, 2011 (Doc. 45 in 09-180) at 2-3. Thereafter, Plaintiff sporadically was approved for, and assigned, limited duty work

(allegedly including functions he could not physically perform), until his doctor cleared him in April 2008 to perform full-duty mail delivery. *Id.* at 3-4. Plaintiff claimed that, just days after returning to full duty, he suffered a back injury. *Id.* at 4. Plaintiff remained employed with Defendant after suffering the back injury, but was terminated in June 2009 for "willful misconduct" and violations of work rules. *See* Doc. 21-1 in 09-180 at pgs. 3-4 of 12; *see also* Doc. 7 in 12-1024 at ¶ 4. Although Plaintiff's termination occurred only four months after the filing of his first lawsuit, and nearly two years before that case was resolved in Defendant's favor, Plaintiff did not amend his pleadings to allege wrongful termination.

In the first action, Defendant sought dismissal of a number of Plaintiff's claims and theories, most of which had been inferred by Defense counsel and the Court based on conclusory statements in the pleadings and Plaintiff's opposition papers. *See, e.g.*, Compl. in 09-180 *and* Pl.'s Mot. for Extension (Doc. 15 in 09-180) (identifying, for first time, statutes under which Plaintiff purportedly sought relief). The Court granted Defendant's motion to dismiss regarding Plaintiff's claims of age discrimination, retaliation and "slander," but allowed Plaintiff to proceed under the Rehabilitation Act. *See* Doc. 17 in 09-180 at 4-9 (dismissing all of Plaintiff's claims except for disability discrimination under Rehabilitation Act).

The case proceeded to summary judgment, at which time Defendant demonstrated its entitlement to judgment as a matter of law on Plaintiff's Rehabilitation Act claim. Among other things, the Court found that Plaintiff did not suffer a "disability," as defined under the Act, because his impairments were temporary, and it found that Plaintiff had failed to show that Defendant required him to perform work beyond his medical restrictions. *See* Order dated May 9, 2011 (Doc. 45) in 09-180 at 2-3.

Over one year after the first lawsuit was resolved in Defendant's favor, Plaintiff initiated this second lawsuit. The sum total allegations in his original Complaint are:

> My complaint is about managements [sic] rataliatory [sic] and disruptive abuse of NALC Rules,[1] Regulation and procedures, and other Civil Rights law on:
>
> Feb 19, 09[;] April 3, 4, 6, & 7, 09[;] Jun 11 09 and Jun 12, 09 [sic].

Compl. (Doc. 2 in 12-1024).

Attached to the Complaint is a decision from the U.S. E.E.O.C., Office of Federal Operations, dated May 23, 2012, which denied Plaintiff's request to reconsider an unfavorable decision issued by the Commission on October 25, 2011. In relevant part, the decision stated:

> EEOC Regulations provide that the Commission may, in its discretion, grant a request to reconsider any previous Commission decision where the requesting party demonstrates that: (1) the appellate decision involved a clearly erroneous interpretation of material fact or law; or (2) the appellate decision will have a substantial impact on the policies, practices, or operations of the agency. . . .
>
> Our previous decision affirmed the Agency's final decision finding no discrimination with regard to overtime, absent without leave (AWOL) charges, emergency placement in off-duty status, and [Plaintiff's] removal from employment. We noted that the Agency had met its burden to articulate legitimate, non-discriminatory explanations for its actions, which [Plaintiff] had not shown to be pretext for unlawful discrimination. We noted that [Plaintiff's] removal was precipitated, *inter alia*, by an at-fault motor vehicle accident, and that [Plaintiff] had a record of progressive discipline preceding his removal.
>
> In his request for reconsideration, [Plaintiff] takes issue with the Agency's actions, but offers no new argument or previously unavailable evidence to show that the appellate decision contained a clear error of material fact or law.

*See* EEOC decision (filed under Doc. 2 in 12-1024 at pgs. 2-3 of 4).

Plaintiff, on his own initiative, filed an Amended Complaint on December 14, 2012. *See* Doc. 5 in 12-1024. The sum total of Plaintiff's allegations read:

---

[1] "NALC" refers to the National Association of Letter Carriers, Plaintiff's labor union.

> I worked for [the] Postal Service at the East Liberty Station . . . . My complaint is about managements' constant retaliatory and disruptive abuse of the 2006-2011 NALC Agreement and other Civil Rights Laws pertaining, when, I was terminated [sic].
>
> These events occurred on: 2-19-09, 2-23-9, 3-9-09, 4-3, 4 5 & 7 of 09[,] then on 6-11-09, and finally Jun 12-09 [sic].

*Id.*

Plaintiff then filed a second Amended Complaint (Doc. 7), without leave of Court, and the undersigned retroactively granted leave for its filing. Plaintiff's two-page submission largely reiterates the allegations of the first Amended Complaint, claiming more facts in support of his claims, and for the first time stating that he was "charged AWOL for an approved FMLA [leave]." *See* Doc. 7 in 12-1024 at ¶ 5C.

Defendant timely filed a Motion to Dismiss, and, rather than file a response as ordered by the Court, Plaintiff filed a "Motion to Continue Under the 'Notice Pleading Act' of 2009-10 [sic]." *See* Doc. 14 in 12-1024. Therein, Plaintiff states more factual allegations, including references to the two prior injuries forming the basis of his first lawsuit; he claims to have been denied "emergency medical treatment"; and he accuses Defendant of violating OSHA. *See id.*

In response, the Court wrote:

> To the extent that Plaintiff, in referencing a 'continu[ance],' meant that he does not want Defendant's Motion to Dismiss . . . to be granted [*i.e.*, that his lawsuit should 'continue'], the Court [already had] ordered Plaintiff to file a written response[, which was due the date of Plaintiff's 'Motion to Continue']. . . . If Plaintiff's [filing] was intended to be his response to Defendant's Motion, the Court will consider the substance of said filing in ruling on Defendant's Motion to Dismiss. Should Plaintiff have anything further to say in opposition to Defendant's Motion, he shall file a response (not a motion) by no later than April 23, 2013.

Order dated Apr. 8, 2013 (Doc. 15 in 12-1024).

On April 23rd, Plaintiff filed a typewritten response in opposition to the Motion to Dismiss, ignoring Defendant's legal arguments and claiming that "[he is] protected under . . . 'color of law,' Rehabilitation Act of 1973, Whistle Blower Act, OSHA Act, FELA Act and the FMLA Act [sic]." Doc. 16 in 12-1024 at 1. The filing references his having suffered three work related injuries, presumably including the two addressed in his first lawsuit. *See id.* Plaintiff also claims to have been denied "adequate medical attention and assistance," stating that his supervisors had directed him to finish his delivery route instead of returning to "back to base" to receive medical attention. Plaintiff concludes by alleging that Defendant's purported conduct interfered with his FMLA rights, and he seems to infer that he was wrongfully terminated in violation of unspecified "laws requir[ing] justice from the denials and deprivation of [Plaintiff's] rights and injuries [sic]." *Id.*

Defendant, with leave of Court, filed a Reply in support of the Motion to Dismiss, and Plaintiff made yet another submission, entitled, "Request Motion to Continue [sic]." *See* Doc. 22 in 12-1024. Therein, Plaintiff reiterated his grievances regarding Defendant's handling of his purported work injuries, and he claimed that Defendant's conduct was discriminatory and violated the NALC agreement. *See id.*

Of this filing, the Court stated,

> Although labeled as a motion, Plaintiff's filing appears to reflect his desire to
> present further argument in opposition to Defendant's Motion to Dismiss. . . .
> In this regard, Plaintiff already has enjoyed two opportunities to be heard. . . .
> Furthermore, Plaintiff's filing, properly construed, constitutes a surreply . . . .
> and such filings are strongly discouraged [by the Court]. In any event, the Court
> will review the contents of Plaintiff's filing . . . . in connection with Defendant's
> Motion to Dismiss.

Order dated June 13, 2013 (Doc. 24 in 12-1024). Given Plaintiff's propensity for making unauthorized submissions, the Court instructed that no further briefing was permitted, and that any further submissions would be disregarded by the Court. *Id.*

## ANALYSIS

At the risk of stating the obvious, Plaintiff's approach in this case, namely, the *ad nauseam* and *ad infinitum* assertion of new allegations and putative legal theories through successive filings, makes an orderly and judicious resolution of his claims onerous, if not impossible. This judicial version of "whack-a-mole" is not befitting the federal court system. "[I]t is axiomatic that [a] complaint may not be amended by the briefs in opposition to a motion to dismiss." *See* Zimmerman v. PepsiCo, Inc., 836 F.2d 173, 181 (3d Cir. 1988) (citation to quoted source omitted). That principle must extend, with greater force, to more routine submissions, such as motions for extension of time and the like.

Moreover, *pro-se* leniency does not excuse a litigant's disregard of the procedural rules that apply in all ordinary civil cases. *See* Mala v. Crown Bay Marina, Inc., 704 F.3d 239, 245 (3d Cir. 2013) (*pro se* litigants "cannot flout procedural rules – they must abide by the same rules that apply to all other litigants") (citing and quoting Supreme Court precedent stating, "[w]e have never suggested that procedural rules in ordinary civil litigation should be interpreted so as to excuse mistakes by those who proceed without counsel"). Plaintiff was advised at the onset of this case that, his *pro se* status notwithstanding, it was the Court's expectation that he would comply with all applicable orders, deadlines, practices and procedures. *See* Doc. 13 in 12-1024 at ¶ 5. For these reasons alone, the Court could dispense with Plaintiff's attempted assertions of new facts and legal theories in each of his successive, non-pleading submissions.

Procedural shortcomings aside, the Court cannot countenance Plaintiff's attempted invocation of every statutory and legal precept he can conceive of. *See* discussion *supra* (noting Plaintiff's flirtation with, among other things, "[the] Whistle Blower Act, OSHA Act, FELA Act," and "[the] color of law [doctrine]"). "The essence of liberal construction is to give a *pro se* plaintiff a break when, although he stumbles on a technicality, his pleading is otherwise understandable." Greer v. Chicago Bd. of Educ., 267 F.3d 723, 727 (7th Cir. 2001) (citation to quoted source omitted). A lawsuit, however, "is not a game of hunt the peanut," *id.*, and construing *pro se* leniency so broadly would pervert the intention of the rule and thwart the interests of justice. *See* Douglas v. Ratliff, 2009 WL 3378672, *11 (S.D. Oh. Oct. 20, 2009) (strongly disfavoring "shotgun" approach to pleading, where plaintiff "throw[s] everything against the wall and hop[es] some[thing] sticks") (citation to quoted source omitted).[2] Indulging Plaintiff's approach also unduly prejudices Defendant, as counsel must either allow Plaintiff to lead her around by the nose, or face a potential adverse ruling should she choose not to chase down every rabbit hole.

---

[2] In the face of similar allegations, the Douglas Court aptly observed:

> While the Court recognizes that *pro se* pleadings are entitled to a liberal construction, plaintiff['s] allegation of a multitude of potential causes of action improperly places the onus on the Court to sift through the pleadings to determine which facts are material to the particular causes of action [potentially] asserted. . . . In addition to watering down the rights of the parties to have valid claims litigated efficiently -- whether the plaintiff's or the defendant's -- shotgun pleadings wreak havoc on the judicial system. [These c]ases . . . consume an inordinate amount of a court's time. As a result, justice is delayed, if not denied, for litigants who are standing the queue waiting to be heard. Their impressions of the court's ability to take care of its business can hardly be favorable. As the public becomes aware of the harm suffered by the victims of shotgun pleading, it, too, cannot help but lose respect for the system.

*Id.* at *11 & n.3 (citation to quoted source omitted).

7

As a final threshold matter, the Court has serious questions regarding how much of Plaintiff's case is left, given the entry of judgment in Defendant's favor in the prior lawsuit. *Res judicata* clearly prohibits re-litigating claims that were brought, or could have been brought, in the first lawsuit. *Compare* discussion *supra* (noting Plaintiff's reliance on Defendant's handling of two purported work injuries that occurred prior to his filing of initial, unsuccessful suit) *with* Morgan v. Covington Twp., 648 F.3d 172, 177-78 (3d Cir. 2011) (*res judicata* precludes assertion of all claims predicated on events occurring prior to filing date of initial lawsuit). Under Third Circuit law, any and all events predating the filing of Plaintiff's prior lawsuit, on February 12, 2009, are off limits in this case.

The Court need not engage in potentially thorny line-drawing regarding which putative claims can withstand the *res judicata* bar, because all of Plaintiff's claims independently fail for reasons that will be explained below. It suffices to say, though, that Plaintiff's *res judicata* problems provide an independent, alternative ground for dismissing many of the claims he attempts to assert here.

Whatever is left of this case, Defendant's counsel has articulated all of Plaintiff's potentially non-frivolous claims, and counsel has explained in detail why they fail. None of Plaintiff's responses address Defendant's legal arguments for dismissal, but, rather, heap on more allegations and statutory name-dropping. The Court cannot rely on Plaintiff's responses to engage a reasoned analysis, so instead it will summarize Defendant's meritorious arguments for dismissal.

First, Defendant is correct that Plaintiff's allegations of workplace discrimination and retaliation fall under the umbrella of the Rehabilitation Act, and his references to "color of law,"

8

"the Whistle Blower Act," OSHA and FELA are misplaced. *See* Def.'s Reply Br. (Doc. 20 in 12-1024) at 3-6.

Second, the EEO complaint corresponding to this case makes no reference to disability discrimination, nor was such a claim reasonably within the scope of the agency's investigation. *See id.* at 8-9. Rather, Plaintiff's grievances related only to age discrimination and unspecified claims of "retaliation." *See* EEO Compl. signed by Pl. on May 8, 2009 (filed under Doc. 20-1 in 12-1024, at pg. 2 of 13) (checking boxes for "age and "retaliation" as "[the] type of discrimination [Plaintiff was] alleging") (internal capitalization omitted) *and* "Acknowledgement" from EEO Services dated Jul. 17, 2009 (filed under Doc. 20-1 in 12-1024, at pgs. 4-6 of 13) (scope of investigation .was limited to allegations of age discrimination and retaliation). Thus, Plaintiff failed to exhaust administrative remedies regarding disability discrimination. *See* Def.'s Reply Br. at 9-10.

Third, Plaintiff fails to allege *prima facie* cases of age discrimination or retaliation. None of Plaintiff's pleadings or attempted amendments (actual or *de facto*) makes a plausible case for concluding that Plaintiff was treated less favorably than similarly situated younger employees. *Id.* at 10-12. Nor does Plaintiff identify protected activity in which he engaged, or a causal connection between such activity and an adverse employment action. *See* Def.'s Br. (Doc. 12 in 12-1024) at 7-8. It is not the Court's role to act as Plaintiff's *de facto* counsel and hunt for viable theories of discrimination or retaliation; nor may the Court conjure allegations to support them. *See* <u>Hunt Optics & Imaging, Inc. v. Greene</u>, 2010 WL 3303792, * (W.D. Pa. Aug. 19, 2010) (courts may not properly serve as *pro se* litigants' "*de facto* counsel") (citation to quoted source omitted, collecting cases); <u>Martin v. Overton</u>, 391 F.3d 710, 714 (6th Cir. 2004)

("[l]iberal construction does not require a court to conjure allegations on a litigant's behalf") (citation to quoted source omitted, alterations in original).

Fourth, Plaintiff's attempted invocation of the FMLA is time-barred. Under the law, Plaintiff had two years to file a claim, three years if the FMLA violation was willful. *See* Def.'s Br. at 8-10. At the very latest, Plaintiff's potential claim accrued on the date of his termination, June 12, 2009, and he only initiated this lawsuit on July 23, 2012, more than three years later. *See id.*; *see* Doc. 1 in 12-1024 (lawsuit initiated Jul. 23, 2012).

Finally, Plaintiff has failed to state claims for a violation of his NALC Agreement. Defendant's briefing astutely recites the governing legal standards, and it demonstrates why Plaintiff does not come close to meeting those standards. *See* Def.'s Br. at 11-14 (explaining that law requires Plaintiff to assert "hybrid claim," alleging both that employer breached CBA and that union breached duty of fair representation). Plaintiff asserts no plausible allegations that his union breached its duty of fair representation, and even if he had, his claims are long time-barred. *See id.* at 14; Podobnik v. U.S. Postal Serv., 409 F.3d 584, 593 (3d Cir. 2005) (statute of limitations for hybrid claims is six months).

Having disposed of all of Plaintiff's potential claims on the merits, the only question remaining is whether he should enjoy another opportunity to amend his pleadings. Further amendment is unwarranted if granting it would be inequitable or futile. Connelly v. Steel Valley Sch. Dist., 706 F.3d 209, 217 (3d Cir. 2013). Here, it would be both. It would be futile because the Court already has, of its and Defendant's own accord, considered all potential avenues of relief and found them lacking. It also would be inequitable to require Defendant, who already once has exhaustively and successfully defended Plaintiff's grievances, to respond to a continuous stream of formal and informal attempted amendments. All that truly remains of

10

Plaintiff's case is his seemingly unwavering belief that it should and will proceed, if only he can utter the right combination of words and legal terms. Defendant, and the Court, have indulged these fancies long enough, and principles of justice require that this final chapter of Plaintiff's discontent now be drawn to a close.

**<u>CONCLUSION</u>**

For all of the reasons stated above, Defendant's Motion to Dismiss (**Doc. 11**) is **GRANTED**, and this case is **DISMISSED WITH PREJUDICE**.

IT IS SO ORDERED.


December 27, 2013                                s\Cathy Bissoon
                                                 Cathy Bissoon
                                                 United States District Judge

cc (via First-Class U.S. Mail):

Clarence C. Houser, Jr.
100 Oxford Drive, Apt. 407
Monroeville, PA  15146


cc (via ECF email notification):

All Counsel of Record